**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**THYSSENKRUPP ELEVATOR**
**CORPORATION,**

    **Plaintiff,**

v.                                                                                                        Case No: 5:21-cv-132-JSM-PRL

**CINCINNATI INDEMNITY**
**COMPANY and OCALA INN &**
**SUITES, LLC,**

    **Defendants.**

## REPORT AND RECOMMENDATION[1]

    In this declaratory judgment action, Defendant Ocala Inn & Suites ("Ocala Inn") seeks the dismissal of the amended complaint or, alternatively, requests a stay. (Doc. 22.) Plaintiff Thyssenkrupp Elevator Corporation ("ThyssenKrupp") has responded in opposition (Doc. 23), as has Defendant Cincinnati Indemnity Company ("Cincinnati") (Doc. 25). Ocala Inn has filed a reply to both responses. (Doc. 29.) For the reasons explained below, I recommend that the motion be granted to the extent that the case shall be stayed pending resolution of the underlying state court action currently proceeding in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida. In all other respects, I recommend that the motion be denied.

    This case involves a dispute regarding insurance coverage and arises out of an accident

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

involving an elevator at Defendant Ocala Inn's Homewood Suites hotel in Ocala, Florida. In the underlying state court action, Dr. Joseph Diliberto ("Diliberto") alleged he was injured while using the hotel's elevator on February 12, 2015. (Doc. 1, p. 3). Specifically, Diliberto alleged that the elevator doors closed on his left hand while he was attempting to hold open the elevator doors for approaching passengers. (Doc. 6-1). Diliberto alleged claims of negligence against both Ocala Inn (the owner and operator of the hotel) and ThyssenKrupp (the elevator maintenance company), contending that defendants allowed the elevator to be operated in an unsafe condition and failed to maintain it properly. (Doc. 6-1).

In 2017, Diliberto died, and his widow and personal representative was substituted as plaintiff in the action. The underlying state court action is pending in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, and styled as *Priscilla Aymong, as personal representative of the estate of Joseph F. Diliberto v. Ocala Inn & Suites, LLC and ThyssenKrupp Elevator Corporation*, Case No. 15-1235- CA-B. Because Ocala Inn was covered by a commercial general liability insurance policy (Number CAP 524 28 61 (the "Cincinnati Policy"), in the underlying action, Cincinnati is defending Ocala Inn pursuant to that policy.

Further, in the underlying action, ThyssenKrupp has filed a cross claim for breach of contract against Ocala Inn. (Doc. 6-6). ThyssenKrupp's cross claim is based upon a Platinum Maintenance Agreement between Ocala Inn and ThyssenKrupp. ThyssenKrupp contends that pursuant to that agreement, it should have been named as an additional insured on the Cincinnati policy. The relevant provision provides:

> You expressly agree to name ThyssenKrupp Elevator as an additional insured in your liability and an excess (umbrella) insurance polic(ies). Such insurance must insure us for the claims and/or losses referenced in the above paragraph, and for claims and/or losses arising from the sole negligence or responsibility of ThyssenKrupp Elevator and/or our

>employees. Such insurance must specify that its coverage is primary and non-contributory.

(Doc. 6-6, p. 3).

Meanwhile, in the underlying action, Ocala Inn argued that ThyssenKrupp is nonetheless insured via an "insured contract" provision in the Cincinnati policy and, thus, it did not breach the maintenance agreement. This argument pertains to a Contractual Liability Exclusion clause in the Cincinnati Policy which states:

>b. Contractual Liability
>
>"Bodily injury" or "property damage" for which the insured is obligated to pay
>
>damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
>That the insured would have in the absence of the contract or agreement; or
>
>Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

(Doc. 6-1, Section 1, Coverage A.2.b.(2)).

In the underlying action, ThyssenKrupp moved for partial summary judgment on its cross claim against Ocala Inn. The state court denied summary judgment and stated:

>Based on the evidence presented, the Court finds that disputed facts exist which preclude the entry of summary judgement. Although Ocala Inn clearly did not name ThyssenKrupp as an additional insured, this failure may not be a material breach of the contract if ThyssenKrupp is insured under the "insurance contract" provision or otherwise indemnified under the Indemnification clause.

(Doc. 6-7).

The amended complaint before this Court seeking declaratory relief is brought by ThyssenKrupp against Ocala Inn and its insurer Cincinnati. In the instant case, ThyssenKrupp seeks the Court's declaration as to whether it is entitled to a defense or indemnity provided by Cincinnati in the underlying action. (Doc. 6). In Count I of the amended complaint, ThyssenKrupp seeks declaratory relief against Cincinnati and Ocala Inn and requests that the Court declare that the Cincinnati Policy issued to Ocala Inn provides coverage and a duty to defend ThyssenKrupp for the allegations in the underlying action, and to declare that the Cincinnati Policy provides coverage and a duty to indemnify ThyssenKrupp for the claims in the underlying policy. (Doc. 6). In Count II, ThyssenKrupp seeks declaratory relief against both defendants, including a declaration that ThyssenKrupp is an insured under the Cincinnati Policy and that Cincinnati has a duty to provide Thyssenkrupp with a "full and immediate conflict free defense, and to reimburse ThyssenKrupp for all defense costs," and related relief. (Doc. 6). In Count III, ThyssenKrupp also seeks declaratory relief against both defendants as to their duty to indemnify. In Count VI, ThyssenKrupp alleges a breach of contract claim against Cincinnati for failing to provide a defense and indemnity in the underlying action. (Doc. 6).

### I. LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences from there. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit uses a two-pronged approach in applying the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

Here, Plaintiff brings suit under the Declaratory Judgment Act, which provides, in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading,

> may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The purpose behind the Declaratory Judgment Act is to afford a new form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989). Specifically, the Act permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty. *Id*.

The Declaratory Judgment Act grants to the federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic. *See Texas v. United States*, 523 U.S. 296, 300 (1998); *Aetna Life Ins. Co.*, 300 U.S. at 240–41. On the other hand, a court should permit a claim for declaratory judgment to proceed where declaratory relief would (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004).

## II. Discussion

Ocala Inn moves to dismiss the amended complaint and argues that neither the duty to defend nor the duty to indemnify is ripe for adjudication. Alternatively, Ocala Inn argues that this Court should decline jurisdiction over ThyssenKrupp's request for declaratory relief because the issues it raises have already been raised in the underlying lawsuit and can better be resolved in that forum. The Court will address these arguments in turn.

### A. Duty to Defend

First, Ocala Inn takes the position that ThyssenKrupp has failed to allege a justiciable controversy because there has been no resolution in the underlying action of the claims against ThyssenKrupp, the party seeking indemnification. Ocala Inn contends that there must first be a determination of whether ThyssenKrupp is liable or at fault for the damages claimed by Dr. Diliberto before it can be determined whether ThyssenKrupp is entitled to indemnification or coverage under the Cincinnati Policy.

Both ThyssenKrupp and Cincinnati oppose Ocala Inn's motion to dismiss. As both correctly point out, Ocala Inn fails to properly distinguish between the duty to defend and the duty to indemnify. Indeed, "an insurer's duty to defend is separate and distinct from its duty to indemnify, and is more expansive." *First. Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997).

Ocala Inn maintains that neither the duty to defend nor the duty to indemnify is ripe for adjudication. Its argument, however, fails to distinguish between the two duties. Ocala Inn has cited cases for the proposition that "the duty to defend and indemnify is contingent

on the outcome of the Underlying Lawsuit" (Doc. 22, p. 11), but even those cases distinguish between the duty to defend and the duty to indemnify. *See Smithers Constr., Inc. v. Bituminous Cas. Corp.*, 563 F. Supp. 2d 1345, 1348-49 (S. D. Fla. 2008) (distinguishing between the duty to defend and the duty to indemnify and stating that only the duty to defend would be addressed until resolution of the underlying liability action). Another case cited by Ocala Inn is inapplicable as it involved a claim for declaratory judgment regarding constitutional claims. *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1285 (S.D. Fla. 2007).

Indeed, the duty to defend is a distinct and independent duty. The duty to defend is determined from the allegations in the complaint in the underlying action and the terms of the insurance policy. *See Chestnut Assoc., Inc. v. Assurance Co. of America*, 17 F. Supp. 3d 1203, 1209 (M.D. Fla. 2014). "An insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint." *Southern Coatings, Inc. v. Century Sur. Co.*, No. 07-80558-CIV, 2008 WL 954178, at *3 (S.D. Fla. Apr. 8, 2008) (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 So.2d 435, 442–43 (Fla.2005)). In making a determination regarding the duty to defend, "the Court must analyze the state Complaint to determine whether it alleges facts that fairly and potentially bring the state court suit within Policy coverage, without regard to the accuracy of the allegations and giving [the insured] the benefit of any doubts concerning those allegations. *Southern Coatings, Inc. v. Century Sur. Co.*, 2008 WL 954178, at *3.

Ocala Inn argues in its motion to dismiss that the duty to defend is not ripe for adjudication. (Doc. 22, p. 11). The basis for that conclusion is that it maintains that the duty to defend is not ripe for adjudication because there has been no resolution of the claims against

ThyssenKrupp, the party seeking indemnification. As explained above, that argument does not pertain to the duty to defend. Accordingly, the undersigned finds that the duty to defend is ripe for adjudication. As explained further below, however, other considerations weigh in favor of this Court abstaining from considering the duty to defend pending resolution of the underlying lawsuit in state court.

### B. Duty to Indemnify

Ocala Inn also argues that the issue of the duty to indemnify is not ripe for adjudication because there has been no resolution of the claims against ThyssenKrupp in the underlying lawsuit. This argument has merit.

"[A]n insurers duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. CIV.A. 07-0563WSB, 2007 WL 4335499, at *5 (S.D. Ala. Dec. 7, 2007) (quotation marks omitted). "Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001) (citations omitted).

Recognizing the above principles and when faced with similar situations, courts have sometimes stayed a plaintiff's action for declaratory relief on the issue of duty to indemnify pending the state court's resolution on the issue of liability in the underlying suit, and meanwhile, permitted the action for declaratory relief on the issue of duty to defend in the underlying state court action to proceed. *See Great Am. Assurance Co. v. Walters*, No. 3:15-CV-1008-J-39JBT, 2015 WL 13567713, at *3 (M.D. Fla. Oct. 7, 2015); *Owners Ins. Co. v. Hovis Custom Builders, Inc.*, No. 3:14-CV-1183-J-39JBT, 2014 WL 12705065, at *2 (M.D. Fla. Oct.

21, 2014) (*sua sponte* staying request for declaratory judgment regarding indemnity obligations pending state-court proceedings and allowing declaratory judgment on duty to defend to proceed on service on complaint); *and Atain Specialty Ins. Co. v. Miami Drywall & Stucco, Inc.*, No. 12-21370-CIV, 2012 WL 3043002, at *2-3 (S.D. Fla. July 25, 2012) (allowing a declaratory action to proceed on the issue of an insurer's duty to defend but staying the issue of the insurer's duty to indemnify until (1) the court found that the insurer had a duty to defend, and (2) the underlying state court allocated at least some liability to the insured).

As numerous courts have explained, this approach is consistent with the additional consideration that, in some situations, a ruling on indemnification by the federal court could encroach on the resolution of the ongoing state proceedings. *See Southern Coatings, Inc. v. Century Sur. Co.*, No. 07-80558-CIV, 2008 WL 954178, at *5 (S.D. Fla. Apr. 8, 2008). The Court will now turn to Ocala Inn's argument regarding abstention.

### C. ABSTENTION

Finally, Ocala Inn argues that even if the issues raised by ThyssenKrupp were ripe, this Court should decline to exercise jurisdiction over them "because ThyssenKrupp already raised these issues in the Underlying Lawsuit, and the state court already determined that issues of fact must be decided before the issue of coverage is ripe for adjudication." (Doc. 22, p. 12). Ocala Inn contends that the underlying lawsuit constitutes a parallel proceeding involving substantially the same issues and parties and that the court should determine whether to exercise jurisdiction by looking to the nine factors set forth by the Eleventh Circuit in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).

Cincinnati disagrees and submits that this case and the underlying action are not parallel proceedings. Cincinnati explains that ThyssenKrupp's breach of contract cross claim

in the underlying action asserts that Ocala Inn breached the parties' elevator maintenance agreement by failing to name ThyssenKrupp as an additional insured on the Cincinnati Policy – a distinct and separate issue to whether Cincinnati is required to provide ThyssenKrupp with a defense and coverage. Cincinnati explains:

> ThyssenKrupp's breach of contract cross-claim in the Underlying Action asserts Ocala Inn breached the parties' elevator maintenance agreement by failing to name ThyssenKrupp as an additional insured on the Cincinnati Policy. The issue in that case is whether Ocala complied with its contractual obligations, not whether Cincinnati is required to provide ThyssenKrupp with a defense and coverage, a separate and distinct issue.

(Doc. 25, p. 13).

To be sure, this action and the underlying state court action are closely intertwined. In this action, ThyssenKrupp alleges claims for declaratory judgment regarding the duties to defend and indemnify and alleges a breach of contract claim. (Doc. 6). The state court action includes claims for negligence related to the maintenance of the hotel's elevator and breach of contract for Ocala Inn's failure to name ThyssenKrupp as an additional insured on its insurance policy. (Doc. 6-3). In other words, the state court action and this action both include breach of contract claims and those claims are closely related. (See Doc. 6, Count IV – breach of contract brought by ThyssenKrupp against Cincinnati and Doc. 6-6, Count I – cross claim for breach of contract brought by ThyssenKrupp against Ocala Inn). Further, while ThyssenKrupp maintains that this action alleges separate claims in regard to the duty to defend and indemnify, it is readily apparent that those claims involve many of the same issues raised in the state court proceeding.

Even assuming that Cincinnati, who is not a party to the state court action, would not be bound by any factual determinations relevant to insurance coverage in that case (*see Great*

*American Assurance Co. v. Elliott*, 846 F. Supp. 2d 1258, 1263-64 (M.D. Fla. 2012) (insurer not bound by factual determinations made in underlying liability action where the interests of insurance company were antagonistic toward the insured)), there are other important considerations.

Importantly, even if the underlying litigation and this action are not parallel actions, it would be within this Court's discretion to decline to issue a declaratory judgment in this case if there is factual overlap between the two actions. As the Eleventh Circuit recently clarified, the existence of a parallel state court proceeding is not a prerequisite to a federal district court's refusal to entertain declaratory judgment action. *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278 (11th Cir. 2021) (holding that the district court did not abuse its discretion in finding factual overlap between state court action and federal declaratory judgment action and dismissing and declining to exercise jurisdiction over declaratory judgment action.). Further, the federal district court considers the totality of the circumstances, of which similarity between the concurrent state court proceeding and the federal declaratory judgment action is one of the factors, but not a threshold factor. *Id.*

In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), the Eleventh Circuit set out nine "non-exclusive guideposts" for district courts to consider in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under § 2201(a):

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

>  (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
>  (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
>  (6) whether there is an alternative remedy that is better or more effective;
>
>  (7) whether the underlying factual issues are important to an informed resolution of the case;
>
>  (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
>  (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d at 1331.

Given the totality of the circumstances, the undersigned finds that these factors weigh in favor of this Court staying this action pending resolution of the state court proceedings. Considering practicality and judicial economy, allowing the instant action to proceed would at a minimum create confusion as opposed to clarifying the issues, and there may be encroachment on the state's jurisdiction. Although the breach of contract claim in this action has been pled to avoid precisely duplicating the same claim in the state court proceeding (meaning that ThyssenKrupp has only sued Ocala Inn for breach of contract in state court, and here has sued Cincinnati), there is considerable overlap between the two claims. The same is true of the declaratory judgment claims regarding duty to defend and indemnify. The crux of all the claims in this case is a determination of the parties' requisite duties, rights, and responsibilities under the relevant documents, including the Cincinnati Policy and the

elevator maintenance agreement. That Cincinnati as the insurer may not necessarily be bound by factual determinations in this lawsuit does not obviate the reality that significant complications (both legal and logistical) and confusion could ensue should this Court address the claims pending before it prior to resolution of the state court proceedings.

Further, the underlying factual issues are important to an informed resolution of this case and, as Ocala Inn argues, "lie squarely within the province of the state court" which is better situated to consider the factual context underlying the issues as well as the applicable law. *See Endurance Assurance Corp. v. Zoghbi*, 403 F. Supp. 3d 1301, 1309 (S.D. Fla. 2019).

Notably, the state court proceedings are well underway and, as the parties represent, past the summary judgment stage. Here, as in similarly situated cases, considerations of comity, federalism and judicial economy all weigh in favor of allowing the state court action to proceed unaffected by any rulings in this action. *See Southern Coatings,* 2008 WL 954178 at *5. Indeed, depending on the finding of the state court, the indemnity claim here could be entirely moot. The best course of action is to stay the case until the state court action has concluded.

Taking into consideration the totality of the circumstances and appliable legal principles, the undersigned recommends that this Court should retain jurisdiction, but that this action be stayed pending resolution of the state court action.

### III. RECOMMENDATION

For the reasons explained above, I respectfully recommend that Ocala Inn's motion to dismiss (Doc. 22) be granted to the extent that the case shall be stayed pending resolution of the underlying state court action. In all other respects, I recommend that the motion be denied.

Recommended in Ocala, Florida on November 23, 2021.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy